UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARIA ESCALERA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF SAN PABLO, et al.,<br><br>    Defendants. | Case No. 23-cv-06491-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 30 |

# INTRODUCTION

On December 15, 2021, San Pablo police officers shot and killed Sergio Baldemar Escalera-Valdez, who was carrying a replica BB gun that was labeled as (and looked like) a Colt Defender (a real handgun). He sued the officers and the City of San Pablo for violations of federal and state law and Umarex, the manufacturer of the replica gun, for a design defect that created a danger — a BB gun that looked real — that caused his death. Umarex moved to dismiss in part because the BB gun complied with federal and state marking requirements and carried warnings, and the plaintiff did not otherwise state a design-defect claim. The court grants the motion on these grounds.

# STATEMENT

On December 15, 2021, the day he died, Mr. Escalera, who was 45, "was suffering from severe mental illness and depression. . . , [and] [f]amily members recall that [he] had been battling

depression for months." That morning, he was crying, and family members tried to console him, but he left the house, "informing them that he wasn't going to return." He drove away in his pickup truck and visited his parents, "presumably to see them for the last time. Afterwards, [he] . . . call[ed] his siblings to say his goodbyes."[1] Panicking, his family members "tried to contact Mr. Escalera and persuade him to return home. Their efforts yielded no results."[2] Sometime between 10 a.m., when he left home, and 2 p.m., Mr. Escalera began drinking. "Unbeknownst to Mr. Escalera's family," Mr. Escalera also had the replica Colt BB gun with him.[3]

At 2:27 p.m., a person called 911 in San Pablo to report a white man in his 40s standing outside a convenience store, in the parking lot, next to a red truck, holding a black pistol.[4] By 2:33 p.m., a responding officer saw Mr. Escalera in a red truck nearby and pulled him over. Other units arrived simultaneously.[5] The officers ordered Mr. Escalera to get out of the truck, he did not comply initially, but eventually he did, emerging with the replica gun in his hand. He "never raised the BB gun toward the Defendant Officers . . . [and] never pointed it at them. Nonetheless, in the seconds after Mr. Escalera exited" the truck, officers shot him seven times, first when he was standing next to the truck and then — in an "additional volley" — "after he had already fallen to the ground and posed no threat to the officers."[6] He died as a result. All four responding officers (all individual defendants) shot Mr. Escalera.[7]

The replica BB gun "is indistinguishable at a distance from an actual 9mm Colt Defender." It looks like this:[8]

---

[1] Second Amended Complaint (SAC) – ECF No. 28 at 4 (¶ 15). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶ 16.)

[3] *Id.* at 4–5 (¶ 17).

[4] *Id.* at 5 (¶ 18).

[5] *Id.* (¶ 19).

[6] *Id.* (¶¶ 20–22).

[7] *Id.* (¶ 23).

[8] *Id.* at 6 (¶ 26).



The replica gun has this warning printed on the flip side of the gun: **"WARNING.** NOT A TOY. MISUSE OR CARELESS USE MAY CAUSE SERIOUS INJURY OR DEATH. BEFORE USING, READ THE OWNER'S MANUAL AVAILABLE FREE FROM UMAREX USA, FORT SMITH, AZ."[9] The owner's manual similarly warns that the BB gun is not a toy, can cause injury

---

[9] Gun Image, Ex. A to Turner Decl. – ECF No. 30-1 at 6. The plaintiffs say only that the court cannot consider materials outside of the pleadings and ask alternatively for the motion to be converted to a summary-judgment motion and for a sixty-day continuance for discovery. Opp'n – ECF No. 36 at 14 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2019)). But the complaint references the gun, and the incorporation-by-reference doctrine applies. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005). Also, the district attorney's report includes a photograph of the gun recovered here, again something that the court can consider under the incorporation-by-reference doctrine. D.A.'s Rep., Ex. D to Prountzos Decl. – ECF No. 30-2 at 17 (p. 14). Courts also take judicial notice of product packaging. *Gustavson v. Wrigley Sales Co.*, 961 F.Supp.2d 1100, 1113 n.1 (N.D. Cal. 2013) (taking judicial notice of product packaging and website screenshots); Reply – ECF No. 39 at 9 (collecting cases taking judicial notice of websites and packaging) (citing *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL 2327923, at *2 (N.D. Cal. May 31, 2019); *Allen v. ConAgra Foods, Inc.*, No. 13-CV-01279-JST, 2013 WL 4737421, at *2 (N.D. Cal. Sept. 3, 2013); *In re Dual-Deck Video Cassette Recorder Antitrust Litig. v. Matsushita Elec. Indus. Co.*, No. MDL 765 PHX RCB, 1991 WL 425379, at *3 n.7 (D. Ariz. Jan. 7, 1991), *aff'd sub nom.*, 11 F.3d 1460 (9th Cir. 1993)). The plaintiffs do not dispute the authenticity of Umarex's documents. The court judicially notices them and, to the extent that it has the gun image, the D.A.'s report. *See also* Mot. – ECF No. 30 at 18–19 (collecting cases about judicially noticing reports and public records of agencies); *Lee v. Cnty. of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (judicially noticing existence of public records and undisputed facts in them);*White v. Soc. Sec. Admin.*, No. 14-cv-05604-JST, 2015 WL 3902789, at *2 (N.D. Cal. June 24, 2015) (judicial notice of five Social Security Administration policy documents available on a government website); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 2604774, at *3 n.1 (N.D. Cal. June 10, 2014) (Food and Drug Administration letters and press releases). The court does not judicially notice disputed facts in any of the documents. In any event, the documents do not change the conclusion that the plaintiffs do not state a claim as a matter of law.

ORDER – No. 23-cv-06491-LB                      3

or death, and should not be brandished in public because "it may confuse people and may be a crime. Police and others may think it is a firearm. This could cause aggressive action that could lead to your death. Do not change the coloration and markings to make it look more like a firearm."[10]

The complaint has five claims: (1) a Fourth Amendment claim for excessive force against the officers and a *Monell* claim against the City; (2) a Fourteenth Amendment claim against the officers and the City; (3) a wrongful-death claim against the officers and the City; (4) a design-defect claim against the BB gun manufacturer, Umarex; and (5) a battery claim against the officers.[11] The city defendants answered, and Umarex moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[12] The court held a hearing on May 9, 2024. The parties do not dispute that the court has federal-question jurisdiction over the federal claims and supplemental jurisdiction over the state claims.[13] 28 U.S.C. §§ 1331 & 1367(a). All parties consented to magistrate-judge jurisdiction.[14] *Id.* § 636(c)(1).

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned

---

[10] Owner's Manual, Ex. B-1 to Turner Decl. – ECF No. 30-1 at 26, 28, 29.

[11] SAC – ECF No. 28 at 10–15 (¶¶ 38–73).

[12] Answer – ECF No. 32; Mot. – ECF No. 30.

[13] SAC – ECF No. 28 at 4 (¶ 13).

[14] Consents – ECF Nos. 9, 12, 26, 33.

up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the claim needs to be plausible, and not the facts themselves ...." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); see *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); see *Steele-Klein v. Int'l Bhd. of Teamsters, Loc*. 117, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

The issue is whether the plaintiffs have pleaded a design-defect claim under the risk-benefit test, meaning, whether the risk of the design outweighs the design's benefits.[15] The plaintiffs cite no case where the court has imposed liability in similar circumstances. The court does not impose

---

[15] The plaintiffs limited their argument to the risk-benefit test. Opp'n – ECF No. 36 at 14. It is, as Umarex suggest, the only potentially viable theory. Mot. – ECF No. 30 at 21.

it here.

A product's design is defective in one of two ways: (1) under the consumer-expectation test (meaning, the product does not perform as safely as ordinary consumers would expect when using the product in an intended or reasonably foreseeable manner; or (2) under the risk-benefits-test (the product's design is defective because it embodies "excessive preventable danger," meaning, the risk of danger inherent in the design outweighs the benefit of the design). *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1208 (2006). The second test is at issue here.

The plaintiffs contend that they have pleaded the elements of a claim: (1) Umarex sold the replica gun; (2) Mr. Escalera was killed when he brandished it; and (3) the replica gun lacked prominent markings — such as an orange tip — that were a substantial cause of Mr. Escalera's death.[16] But they concede that Umarex complied with the branding requirements under state and federal law, which do not require the markings.[17] 16 C.F.R. § 1272.1–2 (excepting BB or pellet guns from the marking requirements for toy guns); Cal. Penal Code §§ 20155 (toy guns), 20165 (excluding BB devices from requirements for color markings for imitation firearms), 16700(a)(1) & (b)(3)–(4) (excluding BB devices from the definition of imitation firearms), § 16250 (defining BB devices). The replica gun had the required warnings that it could be mistaken for a real firearm by law enforcement. *Id.* § 20160.

Under the risk-benefits test, a product "may be found defective in design" if the design "embodies excessive preventable danger." *Hansen v. Sunnyside Prod., Inc.* 55 Cal. App. 4th 1497, 1512 (1997). Courts in other districts and venues have recognized that the risk attached to careless use of a BB gun is apparent, open, and obvious.[18] The labeling here conveyed that risk. But even without that context, this case involves a BB gun that allegedly looked like a real pistol and that did not violate any laws about the required markings for replica or toy guns. The danger of brandishing the gun in front of the police is obvious, just as brandishing a knife would be, or the

---

[16] Opp'n – ECF No. 36 at 15–16 (citing SAC – ECF No. 28 at 8–10 (¶¶ 36–37) and 14 (¶¶ 61–63) & Judicial Council of Cal. Civ. Jury Instructions (CACI) No. 1204)).

[17] *Id.* at 16.

[18] Mot. – ECF No. 29 at 28 (collecting cases).

shooting of a BB gun. *See Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1346 (M.D. Fla. 2003) ("The Court finds, as a matter of law, that the risk that an individual could suffer serious injury or death as a result of the misuse or careless use of a BB gun is apparent to the average consumer, including teenagers, and the dangers of such a product are open and obvious.") Product-liability cases usually are about extra-contractual injury (injury to person or property) and allocate liability to the party most able to identify the risk of that injury (the manufacturer) as a means to vindicate "social policy" (as opposed to contract law, which enforces the intentions of the parties to the agreement). *See Erlich v. Menezes*, 21 Cal. 4th 543, 550–52 (1999) (contract law enforces the intentions of the parties to the agreement, and "tort law is primarily designed to vindicate 'social policy.'"). And here, the product was a replica gun that furnished the buyer with item that resembled a real gun, without violating regulations for the product. The case law does not support allocating the risk of the injury in circumstances like these — as a matter of strict liability for a design defect — to the manufacturer of a replica BB gun.

The court does not reach Umarex's argument that the complaint's allegations suggest that Mr. Escalera caused his own death by his intentional acts (amounting to "suicide by cop").[19] Those are fact issues that cannot be resolved at a motion to dismiss.

## CONCLUSION

The claim cannot be cured by amendment. The dismissal of claim four is with prejudice. This resolves ECF No. 30.

**IT IS SO ORDERED.**

Dated: May 9, 2024

_____
LAUREL BEELER
United States Magistrate Judge

---

[19] *Id.* at 30–33,